1

2

3

4

5

6

7

8

9

10                   IN THE UNITED STATES DISTRICT COURT

11              FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13   GREENLINE INDUSTRIES, INC.,                    No. C 08-2438 CW

14              Plaintiff,                          ORDER DENYING
                                                    WITHOUT PREJUDICE
15        v.                                        DEFENDANTS'
                                                    MOTION TO STAY OR
16   AGRI-PROCESS INNOVATIONS, INC.; and            TO TRANSFER AND
     AP FABRICATIONS, LLC, f/k/a/                   THEIR MOTION TO
17   GREENLINE FABRICATIONS, LLC,                   DISMISS FOR LACK
                                                    OF STANDING AND
18              Defendants.                         DENYING
                                                    PLAINTIFF'S
19                                                  MOTION FOR
                                                    PRELIMINARY
20                                                  INJUNCTION

21

22   _____/

23        Defendants Agri-Process Innovations, Inc. and AP Fabrications,

24   LLC (collectively API/APF) move to dismiss or stay this action or,

25   in the alternative, to transfer it to the Eastern District of

26   Arkansas.  Plaintiff Greenline Industries, Inc. (GII) opposes the

27   motion.  The motion is decided on the papers; the July 24 hearing

28

United States District Court
For the Northern District of California

is vacated.  Having considered all of the papers filed by the

parties, the Court denies without prejudice API/APF's motion to

stay or to transfer as well as their motion to dismiss for lack of

standing.

BACKGROUND

    Except where noted, the following facts are taken from the

complaint and assumed true for purposes of this order.

    In 2003, Jacques Sinoncelli and Michael Brown founded Bio-

Energy Systems, LLC, to develop and build a biodiesel plant in

Vallejo, California based on biodiesel processing technology

developed by Sinoncelli.  Sinoncelli's technology is unique because

it does not require water in the purification process.  After

completion of the plant, Bio-Energy Systems turned to improving and

automating its biodiesel processing technology.  By 2005, Bio-

Energy had increased the capacity of its Vallejo plant from just

over 200,000 gallons per year to over two million gallons per year.

Bio-Energy also developed a continuous flow, computerized process

previously unavailable for small- and medium-scale biodiesel

processors.  At an unspecified later date, Sinoncelli and Brown

founded Greenline Industries.[1]

    In 2005, Greenline began marketing the bio-diesel processing

units designed by Bio-Energy.  In July, 2006 Greenline obtained an

---

    [1]As discussed below, the complaint erroneously states that
Plaintiff GII took various actions as early as 2005.  However, GII
was not incorporated until March 5, 2008.  It appears that, prior
to incorporation, GII may have conducted business as Greenline
Industries, LLC (GIL).  Because it is not clear what entity took
the actions alleged in the complaint, all actions that occurred
prior to the date of incorporation are attributed to "Greenline."

2

exclusive, world-wide license to tecnhnology enabling it to increase the capacity of its systems to sixty million gallons per year.

In 2005, a company called Patriot BioFuels contacted Greenline regarding the purchase of a biodiesel processing unit.  In September, 2005, Greenline and Patriot entered into a contract for the manufacture and installation of a processing plant on Patriot's property in Arkansas.  Although Greenline designed such plants, it contracted with others for the actual manufacture and installation. Patriot proposed Defendant API, an Arkansas engineering firm. Patriot's Chief Operating Officer Michael Shook was, at the time, one of the two principles of API.  API had no prior experience in biodiesel processing.

In December, 2005, Greenline entered into a contract with API for the installation of the processing units for Patriot.  Shook signed the contract on behalf of API.  The contract included a confidentiality and non-disclosure provision to protect Greenline's proprietary designs and technology.

In March, 2006, after completion of the Patriot facility, Greenline and API together founded Greenline Fabrications, LLC, for the purpose of installing Greenline's biodiesel plants.  Under the terms of the agreement creating Greenline Fabrications, Greenline was solely and exclusively responsible for the design and development of the biodiesel processing units and API was responsible for managing the manufacture and installation of those units.  Greenline Fabrication has installed approximately twenty-two processing facilities.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   Effective January 1, 2007, Greenline transferred all of its

2   ownership rights in Greenline Fabrication to API, making API the

3   sole owner.  API changed the name from Greenline Fabrications to

4   APF.  At the time of the transfer, Greenline also entered into a

5   vendor agreement with APF that provided terms for the completion of

6   the biodiesel plant projects that were already in progress and on

7   which APF was acting as project manager.  In addition, the vendor

8   agreement provided terms for any future projects in which Greenline

9   selected APF as the vendor to oversee the manufacture and assembly

10  of biodiesel plants.  The vendor agreement provided that Greenline

11  was solely and exclusively responsible for the design of the

12  biodiesel processing units and APF's only responsibility was for

13  the installation of the units designed by Greenline.  Under the

14  vendor agreement, API was permitted to sell Greenline's biodiesel

15  processing systems on a commission basis on the condition that it

16  market the product as a "Greenline Industries" plant and include

17  such an acknowledgment in the sales contract.

18  In a letter dated May 5, 2008, API/APF informed Greenline that

19  they intended to terminate the vendor agreement and demanded over

20  $20 million in exchange for undefined intellectual property created

21  by API and utilized by Greenline.

22  On May 12, 2008, GII filed the complaint in this case,

23  asserting claims for: (1) anticipatory breach of contract;

24  (2) misappropriation of trade secrets; (3) false advertising

25  pursuant to the Lanham Act; and (4) a declaration of its rights

26  with respect to copyrights in the drawings and specifications for

27  the biodiesel plants designed by Greenline and installed by

28  4

1  API/APF.

2      On February 27, 2008, API/APF had filed, in Arkansas state

3  court, a complaint against GIL for breach of contract.  The

4  Arkansas complaint alleged that GIL solicited and hired other firms

5  to build biodiesel plants and failed to pay API/APF $698,654.38 due

6  under the vendor agreement.  At the time it filed its complaint in

7  this Court, GII was not aware of the Arkansas case because API/APF

8  had not yet served it on GIL.  On May 15, 2008, after the complaint

9  in this case had been filed, but before API/APF were served,

10  API/APF filed an "amended and substituted complaint" in the

11  Arkansas state court alleging five claims for: (1) a declaration of

12  the termination of the vendor agreement; (2) a declaration

13  regarding the existence and ownership of intellectual property

14  rights; (3) an accounting of the sums owed by GIL to API/APF;

15  (4) breach of contract; and (5) breach of the duty of good faith

16  and fair dealing.

17      On June 10, 2008, API/APF filed the present motion to dismiss

18  GII's complaint for lack of standing or failure to state a claim.

19  In the alternative, API/APF argue that GII's complaint should be

20  dismissed, stayed or transferred based on the earlier filing of the

21  Arkansas state court complaint.

22      On June 18, 2008, after being served in the Arkansas state

23  court case, GIL removed that case to the Eastern District of

24  Arkansas and, on July 1, 2008, it filed a motion to dismiss, stay

25  or transfer the Arkansas suit, arguing that GII's case in this

26  Court was the first to be filed.

27

28
                                    5

**United States District Court**
For the Northern District of California

DISCUSSION

I.   Standing

     Because it appears that GII has standing to pursue the
intellectual property claims and could amend the complaint to
include allegations to establish standing to pursue the breach of
contract claim, the Court denies without prejudice API/APF's motion
to dismiss for lack of standing.   The motion may be renewed as
discussed below.

II.  First to File

     "There is a generally recognized doctrine of federal comity
which permits a district court to decline jurisdiction over an
action when a complaint involving the same parties and issues has
already been filed in another district."   Pacesetter Systems, Inc.
v. Medtronic, Inc., 678 F.2d 93, 94-5 (9th Cir. 1982).   This
doctrine, known as the first-to-file rule, "gives priority, for
purposes of choosing among possible venues when parallel litigation
has been instituted in separate courts, to the party who first
establishes jurisdiction."   Northwest Airlines, Inc. v. American
Airlines, Inc., 989 F.2d 1002, 1006 (8th Cir. 1993).   The rule
"serves the purpose of promoting efficiency well and should not be
disregarded lightly."   Church of Scientology of California v.
United States Dep't of Army, 611 F.2d 738, 750 (9th Cir. 1979).

     In applying the first-to-file rule, a court looks to three
threshold factors: "(1) the chronology of the two actions; (2) the
similarity of the parties, and (3) the similarity of the issues."
Z-Line Designs, Inc. v. Bell'O Int'l LLC, 218 F.R.D. 663, 665 (N.D.
Cal. 2003).   If the first-to-file rule does apply to a suit, the

court in which the second suit was filed may transfer, stay or dismiss the proceeding in order to allow the court in which the first suit was filed to decide whether to try the case. <u>Alltrade, Inc. v. Uniweld Products, Inc.</u>, 946 F.2d 622, 622 (9th Cir. 1991).

"Circumstances under which an exception to the first-to-file rule typically will be made include bad faith, anticipatory suit and forum shopping." <u>Id.</u> at 628 (internal citations omitted). Another exception to the first-to-file rule applies if "the balance of convenience weighs in favor of the later-filed action." <u>Ward v. Follett Corp.</u>, 158 F.R.D. 645, 648 (N.D. Cal. 1994). This is analogous to the "convenience of parties and witnesses" on a transfer of venue motion pursuant to 28 U.S.C. § 1404(a). <u>Med-Tec Iowa, Inc. v. Nomos Corp.</u>, 76 F. Supp. 2d 962, 970 (N.D. Iowa 1999); <u>800-Flowers, Inc. v. Intercontinental Florist, Inc.</u>, 860 F. Supp. 128, 133 (S.D.N.Y. 1994). The court with the first-filed action should normally weigh the balance of convenience and decide whether an exception to the first-to-file rule applies. <u>Pacesetter</u>, 678 F.2d at 96 (citing <u>Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.</u>, 342 U.S. 180, 185 (1952)); <u>see also</u> <u>Alltrade Inc.</u>, 946 F.2d at 628.

API/APF argue that the first-to-file rule warrants a dismissal, stay or transfer of this action because they filed the original complaint in the Arkansas suit before GII filed this action, and the parties and issues in both cases are substantially the same. GII agrees that the first-to-file rule applies to this case, but argues its complaint in this case, rather than API/APF's Arkansas complaint, was the first-filed complaint.

7

1    While API/APF's Arkansas state court complaint was filed

2  before GII's complaint in this Court, API/APF's case was not

3  removed to federal court until after the instant action was filed

4  and after API/APF filed their amended complaint in the Arkansas

5  state court.  Although neither party directly addresses whether the

6  application of the first-to-file rule is affected by the fact that

7  API/APF originally filed the Arkansas suit in state court and the

8  Court is not aware of any Ninth Circuit case addressing the issue,

9  it appears that the courts that have addressed this issue have

10 found that the date of filing in the state court, not the date of

11 removal, is considered for purposes of deciding which action was

12 filed first.  See, e.g., Manufacturers Hanover Trust Co. v. Palmer

13 Corp., 798 F. Supp. 161, 166 (S.D.N.Y. 1992) (finding "ample

14 authority for the proposition that the state court filing date is

15 the relevant benchmark"); see also Wright, Miller and Cooper,

16 § 3738 (1998) ("After the removal of an action from state court,

17 the federal district court acquires full and exclusive subject

18 matter jurisdiction over the litigation.  The case will proceed as

19 if it had been brought in the federal court originally.").

20 Applying this standard, API/APF's original complaint filed in the

21 Arkansas state court was the first-filed case.

22    GII next argues that API/APF's original complaint "is

23 irrelevant to the first filed analysis because . . . the complaint

24 was never served and thus is null, void and immaterial."

25 Opposition at 10.  GII bases this argument on API/APF's failure to

26 serve the complaint within 120 days from filing as required by

27 Arkansas Rule of Civil Procedure 4(i).  However, API/APF filed an

28                                  8

**United States District Court**
For the Northern District of California

amended complaint, as they were entitled to do under Arkansas Rule of Civil Procedure 15, and served it on GIL before the 120-day time limit had elapsed.  Moreover, the Ninth Circuit has held that it is "the filing of actions in coordinate jurisdictions that invokes considerations of comity." Pacesetter, 678 F.2d at 96 n.3 (emphasis added); see also Ward v. Follett, 1994 U.S. Dist. LEXIS 19751, *5 (N.D. Cal.) ("In determining when a party filed an action for purposes of the first to file rule, courts focus on the date upon which the party filed its original, rather than its amended complaint.").

GII further contends that the Court should not consider API/APF's original Arkansas state court complaint because it is not related to the claims in the amended complaint.  GII contends that "the amended complaint supersedes and replaces the previously filed complaint."  Opposition at 11.  While it is true that an amended complaint becomes the operative complaint once it is filed, this does not override the Ninth Circuit's holding that the date of the filing of an action, rather than the filing of an amended complaint, is used for purposes of the first-to-file rule.  GII also argues that the single breach of contract claim in API/APF's original complaint does not appear in the amended complaint.  However, as API/APF respond, both the original complaint and the amended complaint assert a breach of contract claim arising out of the vendor agreement.

In the alternative, GII argues that, if the Court considers API/APF's Arkansas state court case to be the first-filed, the Court should not apply the first-to-file rule because the breach of

**United States District Court**
For the Northern District of California

1    contract claim in the original, unserved complaint is not

2    sufficiently similar to GII's claims in this case.  However, this

3    case, too, arises out of a claim of breach of the vendor agreement.

4         Citing <u>Northwest Airlines Inc. v. Filipas</u>, 2008 U.S. Dist.

5    LEXIS 31084 (D. Minn.), GII also argues that its complaint is the

6    first filed with respect to the claims now at issue.  In <u>Northwest</u>,

7    the airline filed an action seeking a declaration that its revised

8    pension plan complied with the Employment Retirement Income

9    Security Act (ERISA).  <u>Id.</u> at *1.  The defendant pilots had earlier

10   filed an ERISA breach of fiduciary duty action in the Western

11   District of Washington seeking production of documents and

12   information regarding the revisions the airline was then

13   considering.  <u>Id.</u> at *2.  The Washington court denied the pilots'

14   motion for a preliminary injunction and the pilots moved to stay

15   the action pending an appeal of the denial.  <u>Id.</u>  While the motion

16   to stay was pending, the revised pension plan went into effect and

17   the airline filed the declaratory judgment action in the District

18   of Minnesota.  <u>Id.</u>  The pilots withdrew their motion to stay in the

19   Washington case and filed an amended complaint including

20   affirmative claims against the airline regarding the legality of

21   the revised pension plan.  <u>Id.</u>

22        Even though the Washington action for production of documents

23   had been filed first, both the Washington and Minnesota courts

24   found that the Washington case "was not the first-filed action

25   regarding the legality of the [revised pension plan]."  <u>Id.</u> at 6.

26   The Washington court noted that "resolution of the original Seattle

27   action would not adjudge or impact the claims raised in Minnesota."

28                                    10

**United States District Court**
For the Northern District of California

1   <u>Id.</u>  And, as the Minnesota court pointed out, "Allegations

2   concerning the legality of the Target Plan were not raised by the

3   pilots in the Seattle Litigation until January 10, 2008."  <u>Id.</u>

4       The <u>Northwest</u> court's decision is not binding on this Court

5   and is distinguishable from this case.  Although the claims

6   regarding intellectual property were first raised in GII's claims

7   in this Court, resolution of the breach of contract claim in

8   API/APF's original complaint in the Arkansas court would certainly

9   impact the GII's contract claims in this Court.

10      The Court finds that API/APF's Arkansas suit has priority for

11  purposes of the first-to-file rule.  Therefore, the Court defers to

12  the Eastern District of Arkansas to decide the appropriate forum

13  and whether an exception to the first-to-file rule is applicable.

14  <u>See</u> <u>Pacesetter</u>, 678 F.2d at 96 (noting that normally the respective

15  convenience of the two courts should be addressed to the court in

16  the first-filed action).

17                          CONCLUSION

18      For the foregoing reasons, the Court DENIES without prejudice

19  API/APF's motion to stay or to transfer this action and their

20  motion to dismiss for lack of standing (Docket No. 7).  If the

21  Arkansas court grants GIL's pending motion to transfer, the parties

22  shall file a notice of related cases and the Court will relate the

23  cases, GII may file an amended complaint establishing standing to

24  pursue the breach of contract claim and API/APF may, if necessary,

25  file a motion to dismiss the amended complaint.  If the Arkansas

26  court denies GIL's motion to transfer, the parties shall notify the

27

28                              11

Court.  This case will be transferred to the Eastern District of Arkansas and API/APF may raise their standing arguments in that court.

On July 10, 2008, GII filed a motion for preliminary injunction, seeking to enjoin API/APF from pursuing the Arkansas litigation.  That motion is based on GII's position that this case is first for purposes of the first-to-file rule.  As discussed above, the Court finds that argument unavailing.  Therefore, the Court DENIES GII's motion for preliminary injunction (Docket No. 16).  The hearing previously scheduled for August 14, 2008 is hereby VACATED.

A case management conference will be held in this case as previously scheduled on August 21, 2008 at 2:00 PM, unless by that date the case has been transferred to Arkansas.  If the Arkansas court has not ruled on the motion to transfer by August 11, 2008, the Court will continue the case management conference and all related obligations.

IT IS SO ORDERED.

Dated: 7/28/08

_____
CLAUDIA WILKEN
United States District Judge

12

**United States District Court**
For the Northern District of California